LIFE & CASUALTY INS. CO. v. FIRST NAT. BANK OF OXFORD.

(Division B. Jan. 12, 1931. Suggestion of Error Overruled, Jan. 26, 1931.)

[130 So. 809. No. 29106.]

P. M. **Estes,** of Nashville, Tenn., and **Jas. Stone & Sons**, of Oxford, for appellant.

Creekmore & Creekmore, of Jackson, and **J. W. T. Falkner,** of Oxford, for appellee.

Argued orally by **Phil Stone** and **P. M. Estes**, for appellant, and by **H. H. Creekmore**, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The First National Bank of Oxford, Mississippi, brought suit against the appellant, insurance company, alleging that the insurance company was licensed to do business in the state of Mississippi, and that in the conduct of its business the defendant had as its superintendent, or district manager in the state of Mississippi, one T. E. Johnson, who had been such district manager since June, 1921; that since June, 1921, the defendant had continuously kept and maintained an account with the plaintiff; that all of the deposits to the credit of the said account were made by its district manager, Johnson; and all checks against said account were signed in the name of the defendant by T. E. Johnson, district manager. To the credit of this account there was deposited by the defendant between June 20, 1921, and March 10, 1928, when the account was closed, large sums of money, and from such account there were checked out from time to time large sums of money by the defendant through its district manager, which sums of money so checked out paid the salaries of agents of the defendant, its general expenses in the territory covered by its district agent, and all claims against the defendant growing out of its contracts of insurance written in the territory, and in addition weekly remittances were made to the home office of the defendant. That through all these years the defendant maintained a balance to its credit with the plaintiff, and on March 1, 1928, the credit of the defendant with the plaintiff was two thousand seventy-one dollars

and sixty-two cents; that between the 1st and 7th of March, 1928, large additional sums represented by checks on other banks were deposited to the credit of the defendant with the plaintiff, which credit was conditional and subject to final payment of the checks, and during the same period of time large withdrawals were made, but there was left a balance to the credit of the defendant with the plaintiff until March 10, 1928, when checks which had been deposited by the defendant with the plaintiff for which it had been given credit, and on which checks of the defendant had been paid by the plaintiff, were returned unpaid from the banks on which they were drawn, the checks amounting to seven thousand six hundred fifty-four dollars. The nonpayment of these checks left a debit balance against the defendant and in favor of the plaintiff on its bank account in the sum of seven thousand five hundred sixty-five dollars and four cents; and judgment was demanded for this amount.

The defendant filed various pleas setting up its non-liability, and some of the pleas denied that the account was its account, but was a personal account maintained by T. E. Johnson, and that the defendant was not liable for the overdrafts drawn by T. E. Johnson. It filed other special pleas setting up, in substance, that many of the checks were drawn payable to the order of T. E. Johnson, personally, and that such checks should not have been paid out of the funds belonging to the defendant, if it was the defendant's bank account. It also alleged that the checks which were given by T. E. Johnson personally, and indorsed by him personally, which were returned unpaid by the banks upon which they were drawn and for which he received exchange and cash in various sums, should not be charged to the account of the defendant; that as the defendant had neither made nor indorsed said checks and as the same were not given by Johnson purporting to be the agent of the defendant, nor indorsed by Johnson as district manager, the bank must

be held to have accepted the said checks as cash, relying either upon the credit of T. E. Johnson personally, or on the bank on which they were drawn.

It appears that T. E. Johnon, the district manager of the defendant, paid various obligations of the defendant out of the bank account by checks drawn and signed by him as district manager of the defendant, and that remittances were made to the home office by Johnson, weekly, of sums from two to four hundred dollars, by check so signed, through a long series of years, and that Johnson drew checks upon said account to pay the agents employed by the company in the territory over which he was district manager, and for other expenses in conducting the company's business. It further appears that some time before the account was closed Johnson had resorted to a practice of depositing to the account above stated his personal checks drawn on the bank at Holly Springs, Mississippi; that he would then go to the local express company's office, draw checks payable to himself and indorsed personally, and procure money orders from the express company which he would send to Holly Springs and deposit to his account, upon which he would again draw checks in favor of the Bank of Oxford, and he continued the process as above indicated from time to time. It appears that a few months prior to the closing of the account some of the checks given by Johnson had been returned unpaid by the bank at Holly Springs, upon which they were drawn; that the cashier of the plaintiff took the matter up with Johnson; and that Johnson explained that it was due to failure of remittances to arrive, and such checks were subsequently paid by the bank at Holly Springs. A short while before the account was closed, a traveling agent of the express company, auditing the offices of the company, became suspicious of Johnson's transactions with the express company and told the cashier of the bank that he had reason to believe that Johnson was kiting. The cashier asked the said

agent if he thought he had better close the account, or something to that effect. The express auditor stated he was going to Holly Springs and would investigate and let him know. He returned in a day or two to Oxford, and stated that he had reached the conclusion he was mistaken, that Johnson had a substantial balance to his credit in the bank at Holly Springs. A national bank examiner visited the bank shortly before the account was closed and suggested to the cashier that the cashier was having to do too much work for the account involved, but the cashier explained that he was expecting to secure all of Johnson's business, as Johnson had promised to remove the account from Holly Springs to Oxford.

After the last checks were returned, which appeared to have been given to the bank for exchange and cash and not to be deposited, the account was closed, and demand made upon the defendant for the balance sued for. In answer to this defendant called for full and detailed information and suggested that the bank might be due it, because of improperly paying out the defendant's money. After learning in detail all the facts with reference to the matter, or the main facts in reference thereto, the defendant disclaimed the account.

At the conclusion of the evidence the court disallowed the plaintiff the checks given by Johnson personally on his account drawn on the bank at Holly Springs and not deposited to the account at Oxford and for which he had received cash or exchange, and denied the plaintiff any recovery except as to eight hundred three dollars and eighty-three cents, for which he gave a peremptory instruction against the defendant. In his ruling upon the motions at the end of the trial, among other things, the trial judge said: "The proof in this case shows that within the ten days immediately preceding the closing of this account on the 7th day of March, 1928, T. E. Johnson, General Manager of the Life & Casualty Insurance Company checked out of this account to himself, twelve

thousand eighty-five dollars. It shows that during those days that he deposited to the credit of this account his personal checks on the First State Bank of Holly Springs payable to himself and endorsed by himself the sum aggregating, ten thousand eight hundred thirty dollars. It is apparent to the court that he was doing in those ten days some rather dizzy financeering. I think it would be unjust to the defendant company to make them pay for these checks they got no benefit from, and I think the bank ought to have stopped that sort of thing, or at least, investigated it. In the meantime, he checked out eight hundred three dollars and eighty-three cents, which the court thinks under the proof, went to pay the actual obligations of this company. I am going to eliminate everything but that eight hundred three dollars.''

We think the evidence in the record, which we have examined and considered, warrants the judge in so holding, and the judgment of the court below will be affirmed on direct and cross-appeal.

Affirmed.